UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RICHARD A. PETERKIN,

                         Plaintiff,

v.                                                    1:19-CV-0021
                                                      (GTS/TWD)

SARATOGA COUNTY; MICHAEL H. ZURLO,
Sheriff of Saratoga County; and ANTHONY
PIRRONE, Deputy Sheriff of Saratoga County,

                         Defendants.
_____

APPEARANCES:                                                   OF COUNSEL:

LAW OFFICE OF MARK S. MISHLER, P.C.        MARK A. MISHLER, ESQ.
  Attorney for Plaintiff
750 Broadway
Albany, NY 12207

BURKE, SCOLAMIERO, & HURD, LLP            PETER M. SCOLAMIERO, ESQ.
  Attorneys for Defendants                                JUDITH B. AUMAND, ESQ.
7 Washington Square
P.O. Box 15058
Albany, NY 12212-5085

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

      Currently before the Court, in this civil rights action filed by Richard Peterkin ("Plaintiff") against the above-captioned entity and two individuals ("Defendants") arising from an arrest and prosecution of Plaintiff, is Defendants' motion to dismiss Plaintiff's Complaint for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 8.) For the reasons set forth below, the Court grants Defendants' motion to dismiss in its entirety.

I.  **RELEVANT BACKGROUND**

   A.  **Plaintiff's Complaint**

Generally, liberally construed, Plaintiff's Complaint alleges as follows.

On March 7, 2017, Plaintiff, an African-American man, was arrested by Defendant Anthony Pirrone ("Pirrone") on a charge of Inciting to Riot. (Dkt. No. 1, ¶ 2 [Pl.'s Compl.].) The charge stemmed from an incident that had taken place early on the morning of March 5, 2017, at a venue called Spare Time in Halfmoon, New York, in Saratoga County. (*Id.*, ¶ 19.) Plaintiff had been hired to work as a disc jockey at a party at Spare Time that was "mostly attended by African-Americans and Latinos." (*Id.*, ¶ 21.) The party was eventually broken up and shut down by the Saratoga County Sheriff's Department. (*Id.*, ¶ 22.) Two days later, Plaintiff was arrested and charged with Inciting to Riot in violation of N.Y. Penal Law § 240.08, a class A misdemeanor. (*Id.*, ¶ 27.)

Plaintiff was "maliciously charged and prosecuted" by Pirrone and suffered "significant injuries as a result of the arrest and prosecution." (*Id.*, ¶ 5.) Pirrone's malicious purpose and intent in bringing the charge was shared by Defendants Saratoga County ("County") and Sheriff Michael H. Zurlo ("Zurlo"). (*Id.*, ¶ 29.) Defendants "lacked probable cause to believe" that Plaintiff had "engaged in any conduct that could have constituted the offense of Inciting to Riot or any other offense." (*Id.*, ¶ 34.) As a result of Pirrone's actions, which were taken on behalf of himself and on behalf of the County and Zurlo, Plaintiff was held in custody for several hours, fingerprinted, and photographed. (*Id.*, ¶ 30.) Furthermore, because Plaintiff was required to appear in court on "numerous occasions," his "liberty was constrained and infringed upon for the entire period of time the charge was pending from March 7, 2017 until October 11, 2017," when

the charge was ultimately dismissed. (*Id.*, ¶¶ 43, 44.) The charge was dismissed "due to the fact that there was absolutely no evidence that [Plaintiff] had committed the charged offense or any other offense." (*Id.*, ¶ 46.) Moreover, "the purpose and intent" of Defendants in prosecuting Plaintiff was to make him a "scapegoat." (*Id.*, ¶ 48.) Finally, Defendants were motivated by "racial animus towards the people in attendance at the party" and Plaintiff. (*Id.*, ¶ 49.)

Based upon the foregoing allegations, Plaintiff asserts eleven claims: (1) a claim that Defendants violated his right "to equal protection of the law" under the Fourteenth Amendment; (2) a claim that Defendants violated his right "to be free from prosecution on false charges" under the Fourth and Fourteenth Amendments; (3) a claim that Defendants violated his right "to be free from false arrest" under the Fourth and Fourteenth Amendments; (4) a claim that Defendants violated his right "to be free from the denial of liberty without due process" under the Fifth and Fourteenth Amendments; (5) a claim that Defendants violated his right "to equal protection of the law" under the New York State Constitution; (6) a claim that Defendants violated his right "to be free from unlawful discrimination" under N.Y. Human Rights Law; (7) a claim that Defendants violated his right "to be free from malicious prosecution" under the New York State Constitution; (8) a claim that Defendants committed the common-law tort of malicious prosecution; (9) a claim that Defendants committed the common-law tort of false arrest; (10) a claim that Defendants committed the common-law tort of defamation; and (11) a claim that Defendants County and Zurlo committed negligence. (*Id.*, ¶¶ 54, 61, 63, 65, 67, 69, 71, 73, 75, 77, 79, 81.)

For his injuries, Plaintiff "demands compensatory damages in the amount of $1,000,000.00, punitive damages against Defendants Zurlo and Pirrone each in the amount of

$100,000.00, the costs of this action, attorneys' fees pursuant to 42 U.S.C. § 1988, and such other and further relief as the Court deems just and proper." (Dkt. No. 1, at 12.)

B.  **Parties' Briefing of Defendants' Motion**

Generally, in support of their motion to dismiss, Defendants argue that Plaintiff has failed to allege facts plausibly suggesting any claims against them because his Complaint contains only broad, conclusory allegations, rather than allegations of fact. (Dkt. No. 8, Attach. 3 [Defs.' Memo. of Law].) More specifically, Defendants assert seven arguments: (1) the Court should dismiss Plaintiff's claims against Defendants County and Zurlo because the claims arise under *Monell*, and Plaintiff has failed to allege facts plausibly suggesting the existence of either a policy or series of incidents that show a failure to train or supervise; (2) the Court should dismiss Plaintiff's claims of denial of equal protection because he has failed to allege facts plausibly suggesting that he was treated differently than similarly situated individuals; (3) the Court should dismiss Plaintiff's claims of a due process violation, false arrest, false imprisonment, and malicious prosecution because he has failed to allege facts plausibly suggesting that the underlying criminal proceeding was terminated in his favor; (4) the Court should dismiss Plaintiff's common-law claims for malicious prosecution, false arrest, and defamation due to the expiration of the governing statute of limitations; (5) the Court should dismiss Plaintiff's claim of common-law defamation because he has failed to allege facts plausibly suggesting special damages; (6) the Court should dismiss Plaintiff's claims of negligence because he has failed to allege facts plausibly suggesting any negligence by Defendant Pirrone, and the other claims are barred by *Monell*; and (7) the Court should deny and dismiss Plaintiff's demand for punitive damages. (*Id.*)

4

Generally, in response to Defendants' motion, Plaintiff opposes Defendants' challenges to nine of his claims, but concedes that timely Notices of Claim were not filed regarding his claims for common-law false arrest, common-law defamation, and portions of his common-law claim for negligence. (Dkt. No. 11 [Pls.' Memo. of Law].) Moreover, in the alternative to dismissal, Plaintiff requests an opportunity to submit an Amended Complaint to cure any deficiencies in pleading. (*Id*. at 20.)

Generally, in reply to Plaintiff's response, Defendants assert five arguments: (1) the Court should dismiss Plaintiff's federal claims against Defendants County and Zurlo for the reasons asserted in their memorandum of law-in-chief; (2) the Court should dismiss Plaintiff's claims of denial of equal protection for the reasons asserted in Defendants' memorandum of law-in-chief; (3) the Court should dismiss Plaintiff's claims of a due process violation, false arrest, false imprisonment, and malicious prosecution for the reasons asserted in Defendants' memorandum of law-in-chief; (4) the Court should dismiss Plaintiff's claims of negligence for the reasons asserted in Defendants' memorandum of law-in-chief; and (5) the Court should deny and dismiss Plaintiff's demand for punitive damages for the reasons asserted in Defendants' memorandum of law-in-chief. (Dkt. No. 12 [Defs.' Reply Memo. of Law].)

## II. RELEVANT LEGAL STANDARDS

### A. Legal Standard Governing Motions to Dismiss for Failure to State a Claim

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d

204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp.2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp.2d at 212, n.17 (citing Supreme Court cases) (emphasis added).[1]

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp.2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing

---

[1] *Accord, Flores v. Graphtex*, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (Munson, J.); *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998); *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y.1995) (McAvoy, C.J.).

Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp.2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

7

129 S.Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

### B. Legal Standards Governing Plaintiff's Claims

Generally, to state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege "(1) that some person has deprived him of a federal right, and (2) that the person who has deprived him of that right acted under color of state . . . law." *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (internal quotations omitted)). "Section 1983 is not itself a source of substantive rights[,] but merely provides a method for vindicating

8

federal rights elsewhere conferred[.]" *Patterson v. Cty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).

A plaintiff adequately pleads a Section 1983 claim against a municipality where the plaintiff alleges facts that plausibly suggest that the municipality maintained a particular policy or custom that caused a deprivation of constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). A plaintiff may also adequately plead such a claim where the plaintiff alleges facts that plausibly suggest a failure to train; however, this is the case only where factual allegations plausibly suggest that the municipality was "deliberately indifferent" to the need for training and knew to a "moral certainty" that a failure to train would lead to a constitutional violation. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). A plaintiff must also allege facts plausibly suggesting a causal link between the policy or custom and the alleged constitutional violation. *Canton*, 489 U.S. at 385.

1. **Claims Under the Fourth Amendment**

The Fourth Amendment protects against unreasonable "seizures." U.S. Const. Amend. IV, § 1. The Supreme Court has long held that an unreasonable seizure by a state actor in violation of the Fourth Amendment may be pursued in a suit brought under Section 1983. *See, e.g., Brower v. Cty. of Inyo*, 489 U.S. 593, 596 (1989); *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

To prevail on a claim of false arrest under the Fourth Amendment, a plaintiff must allege facts plausibly suggesting the following: (1) that the defendant intended to confine the plaintiff; (2) that the plaintiff was conscious of the confinement; (3) that the plaintiff did not consent to the confinement; and (4) that the confinement was not otherwise privileged. *Ackerson v. City of*

9

*White Plains*, 702 F.3d 15, 19 (2d Cir. 2012). A Section 1983 claim for false arrest under the Fourth Amendment is barred unless the underlying criminal proceeding was terminated in plaintiff's favor. *Hinton v. Moritz*, 11 F. Supp. 2d 272, 275 (W.D.N.Y. 1998). Moreover, a Section 1983 claim for false arrest under the Fourth Amendment is "substantially the same" as a claim of false imprisonment. *Jackson v. City of N.Y.*, 939 F. Supp. 2d 235, 248 (E.D.N.Y. 2013).

To prevail on a claim of malicious prosecution, a plaintiff must allege facts plausibly suggesting the following: (1) the commencement or continuation of a criminal proceeding against her; (2) the termination of the proceeding in her favor; (3) that the state officials lacked probable cause; and (4) that the proceeding was instituted with malice. *Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016) (citing *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003); *Colon v. City of New York*, 60 N.Y.2d 78, 82 (1983)). To satisfy the "favorable termination" element, a plaintiff must demonstrate that the underlying criminal proceeding was terminated "in a manner that is indicative of Plaintiff's innocence." *Lanning v. City of Glens Falls*, 908 F.3d 19 (2d Cir. 2018).

### 2. Claim Under the Due Process Clause

Under the Due Process Clause of the Fourteenth Amendment, no State shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. Amend. XIV, § 1. The Due Process Clause was "intended to secure the individual from the arbitrary exercise of the powers of government." *Daniels v. Williams*, 474 U.S. 327, 331 (1986) (quoting *Hurtado v. California*, 110 U.S. 516, 527 [1884]). Generally, the Due Process Clause protects individuals against two types of government action: substantive due process violations and procedural due process violations. *United States v. Salerno*, 481 U.S. 739, 746 (1987).

### 3. Claim Under the Equal Protection Clause

The Equal Protection Clause of the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). Although "equal protection jurisprudence has typically been concerned with governmental classifications that affect some groups of citizens differently than others . . . [,] an equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally singled out." *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 601 (2008) (internal quotation marks and citations omitted); *see also Harlen Assocs. v. Incorporated Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) ("Although the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class, we have long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials."). To state an equal protection claim based on a theory of selective enforcement, a plaintiff must plausibly allege, among other things, that he was treated differently from other similarly situated individuals. *Engquist*, 553 U.S. at 499.

### III. ANALYSIS

#### A. Whether Plaintiff's Complaint Should Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted

Generally, viewing the record as a whole, the Court agrees with Defendants that Plaintiff has not alleged facts plausibly suggesting Fourth, Fifth, and Fourteenth Amendment claims. Instead, Plaintiff's Complaint is replete with conclusory statements and "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal citations and alterations

omitted). Moreover, because Plaintiff fails to allege facts plausibly suggesting the claimed constitutional violations, the Court declines to exercise supplemental jurisdiction over Plaintiff's state claims, and accordingly does not reach Plaintiff's claim for punitive damages. As a result, for the reasons set forth more fully below, Defendants' motion is granted in its entirety.

### 1. Whether Plaintiff's Claims Against Zurlo and Saratoga County Should Be Dismissed

After carefully considering this matter, the Court answers this question in the affirmative for the reasons set forth in Defendants' memoranda of law. (Dkt. No. 8, Attach. 3 [Defs.' Memo. of Law]; Dkt. No. 12 [Defs.' Reply Memo. of Law].) To those reasons, the Court adds one point, which is intended to supplement, and not supplant, Defendants' arguments.

The Court finds that Plaintiffs' general allegations that, on information and belief, Officer Zurlo and Saratoga County "failed to adequately train and supervise Defendant Pirrone" (Dkt. No. 1) are too speculative and conclusory to plausibly suggest that the County acted with deliberate indifference in disregarding the risk of possible constitutional violations. *See McLennon v. City of New York*, 14-CV-6320, 2016 WL 1089258, at *17 (E.D.N.Y. Mar. 18, 2016) (concluding that "general and conclusory allegation" that municipal defendants "failed to properly train NYPD officers 'knowing that such failures would result in Fourth and Fourteenth Amendment violations'" insufficient to adequately plead municipal liability based on a failure to train); *Lapaix v. City of New York*, 13-CV-7306, 2014 WL 3950905, at *9 (S.D.N.Y. Aug. 12, 2014) (noting, with respect to a deliberate indifference claim, that "a Plaintiff cannot base a claim for a pattern of constitutional violations on one other incident and general allegations regarding discriminatory motivation").

In short, Plaintiff does not allege facts plausibly suggesting that a Saratoga County

policymaker conducted, ordered, ratified, or permitted any violations asserted by Plaintiff. "To the contrary, Plaintiffs allege facts plausibly suggesting the occurrence of a single incident carried out by one or more individuals below the policy-making level. Such allegations are insufficient to make out a claim of municipal liability." *Kenefic v. Oswego Cty.*, 07-CV-0213, 2010 WL 2977267, at *24 & n.42 (N.D.N.Y. July 23, 2010) (Suddaby, J.) (collecting cases).

For all of these reasons, the Court concludes that Plaintiff has failed to allege facts plausibly suggesting the existence of either (1) a municipal policy, custom, or practice that was the moving force behind the statutory and regulatory violations to which they were allegedly subjected, or (2) a series of incidents the show a failure to train or supervise. Accordingly, Plaintiff's Section 1983 claims as against Saratoga County and Officer Zurlo are dismissed.

### 2. Whether Plaintiff's Claim of the Denial of Equal Protection Should Be Dismissed

The Court answers this question in the affirmative for the reasons set forth in Defendants' memoranda of law. (Dkt. No. 8, Attach. 3 [Defs.' Memo. of Law]; Dkt. No. 12 [Defs.' Reply Memo. of Law].) To those reasons, the Court adds one point, which is intended to supplement, and not supplant, Defendants' arguments.

Even when construed with the utmost of special liberality, Plaintiff's Complaint has not alleged facts plausibly suggesting a violation of his right to equal protection. As stated above in Part II.B.1.c. of this Decision and Order, to state an equal protection claim, a plaintiff must allege facts plausibly suggesting that similarly situated persons were treated differently than Plaintiff. Here, Plaintiff fails to allege facts plausibly suggesting that other persons similarly situated were treated differently than him.

For all of these reasons, Plaintiff's claims against Defendants for his right to equal

13

protection are dismissed.

### 3. Whether Plaintiff's Claims of False Arrest, False Imprisonment, and Malicious Prosecution Should Be Dismissed

The Court answers this question in the affirmative for the reasons set forth in Defendants' memoranda of law. (Dkt. No. 8, Attach. 3 [Defs.' Memo. of Law]. Dkt. No. 12 [Defs.' Reply Memo. of Law].) To those reasons, the Court adds one following point, which is intended to supplement, and not supplant, Defendants' arguments.

As stated above in Part II.B.1.a. of this Decision and Order, Plaintiff may state a claim for malicious prosecution by alleging facts plausibly suggesting that criminal proceedings were initiated or continued against him, with malice and without probable case, and were terminated in his favor. *Mitchell v. City of New York,* 841 F3d 72 (2d Cir. 2016); *Swartz v. Insogna* 704 F.3d 105 (2d Cir. 2013). Here, in addition to failing to "set forth the basis upon which the dismissal" of his charge was made (*see generally* Dkt. No. 8, Attach. 3 [Defs.' Memo. of Law]), Plaintiff has failed to allege facts plausibly suggesting malice or a lack of probable cause on the part of Defendants, beyond Plaintiff's threadbare allegation of Defendants' desire to "scapegoat" Plaintiff. (Dkt. No. 1, ¶ 48.) This threadbare allegation is not enough.

Accordingly, Plaintiff's claims of false arrest, false imprisonment, and malicious prosecution are dismissed.

### 4. Whether Plaintiff's Due Process Claim Should be Dismissed

The Court answers this question in the affirmative. Plaintiff has not alleged facts plausibly suggesting a violation of his rights under the Fifth Amendment. For the reasons set forth below, Plaintiff's due process claim is dismissed.

A procedural due process violation occurs when the government deprives a person of a

protected life, liberty, or property interest without first providing notice and an opportunity to be heard. *B.D. v. DeBuono*, 130 F. Supp. 2d 401, 432-33 (S.D.N.Y. 2000). "To determine whether a Section 1983 due process claim is plausibly alleged, the Court evaluates the sufficiency of the allegations with respect to the liberty or property interest alleged and the process due before deprivation of that interest." *Norton v. Town of Islip*, 97 F. Supp. 3d 241, 266 (E.D.N.Y. 2015).

On the other hand, the right to substantive due process, as recognized by the Supreme Court, bars "certain government actions regardless of the fairness of the procedures used to implement them," in order to "prevent governmental power from being used for purposes of oppression." *Daniels v. Williams*, 474 U.S. 327, 331 (1986) (citation and quotations marks omitted); *McClary v. O'Hare*, 786 F.2d 83, 88 (2d Cir. 1986). "In other words, while a procedural due process claim challenges the procedure by which [deprivation of liberty] is effected, a substantive due process claim challenges the fact of the [deprivation] itself." *Southerland v. City of New York*, 680 F.3d 127, 142 (2d Cir. 2012) (alteration in original omitted) (differentiating a procedural due process claim from a substantive due process claim). To state a substantive due process claim, Plaintiff must allege facts plausibly suggesting behavior that "is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998). Conduct intended to injure someone in some way that is unjustifiable by any government interest is the sort of official action most likely to rise to the conscience shocking level. *See Daniels v. Williams,* 474 U.S. at 331 ("Historically, this guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property.") (emphasis in original)).

Here, the Court liberally construes Plaintiff's due process claim as a substantive one. In

15

his Complaint, Plaintiff repeatedly alleges that Defendants "intentionally and maliciously commenced and pursued" the charge of Inciting to Riot against him. (Dkt. No. 1, ¶ 29 [Pl.'s Compl.].) While Plaintiff's liberty was certainly constrained by his arrest, it appears he fails to allege facts plausibly suggesting that Defendants "intended to injure" Plaintiff in some way that is unjustifiable by any government interest. *Daniels*, 474 U.S. at 331.

Accordingly, Plaintiff's due process claim is dismissed.

### B. Whether the Court Should Give Plaintiff an Opportunity to File an Amended Complaint Before His Complaint Is Dismissed

A "district court has discretion whether or not to grant leave to amend, and its decision is not subject to review on appeal except for abuse of discretion . . . ." 3 *Moore's Federal Practice* ¶ 15.08 [4], at 15-64 (2d ed. 1992) (footnotes omitted); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962); *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983). In exercising its discretion, the Court is required to heed the command of Fed. R. Civ. P. 15(a) to grant leave to amend "freely . . . when justice so requires." Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. at 182, 83 S.Ct. at 230; *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990); 3 *Moore's Federal Practice* ¶ 15.08[4], at 15-65. Where it appears that granting leave to amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to amend. *See, e.g., Foman v. Davis*, 371 U.S. at 182 (denial not abuse of discretion where amendment would be futile); *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990) ("Where . . . there is no merit in the proposed amendments, leave to amend should be denied"); *Billard v. Rockwell Int'l Corp.*, 683 F.2d 51, 57 (2d Cir. 1982) (finding denial not abuse of discretion where plaintiff had had "access to full discovery" in a related case).

Here, the defects in Plaintiff's Complaint do not appear to be substantive, but merely

formal. Based on the allegations in the Complaint, Plaintiff could, with additional facts, plausibly suggest viable claims against Defendants. Accordingly, the Court finds that granting Plaintiff an opportunity to amend his Complaint might be productive.

For these reasons, Plaintiff's Complaint shall be dismissed with prejudice unless, within thirty (30) days of this Decision and Order, Plaintiff files an Amended Complaint curing the pleading defects identified in this Decision and Order.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted (Dkt. No. 8) is **GRANTED** in its entirety; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) **shall be DISMISSED with prejudice UNLESS**, within **THIRTY (30) DAYS** of this Decision and Order, Plaintiff files an Amended Complaint curing the pleading defects identified in this Decision and Order; and it is further

**ORDERED** that Plaintiff's Amended Complaint shall be accompanied by a version thereof specifying the insertions and deletions of language in the original Complaint, either through the submission of a redline/strikeout version of the original Complaint, or through other equivalent means so the Court may discern the nature of Plaintiff's amendments and so that Defendants may assess whether to move again for dismissal.

Dated: December 17, 2019
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge